ATTORNEY FOR PETITIONER:
**MELISSA G. MICHIE**
TAX CONSULTANTS, INC.
Columbus, IN

ATTORNEYS FOR RESPONDENT:
**MARILYN S. MEIGHEN**
ATTORNEY AT LAW
Carmel, IN

**BRIAN A. CUSIMANO**
ATTORNEY AT LAW
Indianapolis, IN



FILED
Aug 07 2023, 2:10 pm
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

WENDY H ELWOOD TRUST, )
)
    Petitioner, )
)
       v. ) Cause No. 23T-TA-00002
)
BARTHOLOMEW COUNTY ASSESSOR, )
)
    Respondent. )

### ON APPEAL FROM A FINAL DETERMINATION OF
### THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**August 7, 2023**

WENTWORTH, J.

The Wendy H Elwood Trust (the "Trust") challenges the Indiana Board of Tax Review's final determination that its petitions for a correction of error for assessment years 2018 and 2019 were untimely. Upon review, the Court affirms the Indiana Board's final determination.

### FACTS AND PROCEDURAL HISTORY

In 2016, Carr Road Development, LLC owned several undeveloped, vacant lots in

what was to become the Tipton Lakes Subdivision.  (See Cert. Admin. R. at 53-56, 109, 148-49.)  During its period of ownership, Carr Road Development invested at least $1.5 million in the subdivision.  (See Cert. Admin. R. at 66, 149.)  This included excavating the land and installing vital infrastructure such as water/sewer hookups, sidewalks, curbs, and various roadways.  (See Cert. Admin. R. at 66-76, 149.)

In 2017, Mark Elwood reached out to Jeffrey Bush, the manager of Carr Road Development, expressing his interest in purchasing four contiguous lakefront lots to construct his primary residence.  (See Cert. Admin. R. at 108-09.)  Elwood and Bush reached a verbal agreement in which Elwood agreed to purchase the four lakefront lots, and Bush agreed to oversee the re-platting of the four lots into two lots before closing.  (See Cert. Admin. R. at 108-09, 157.)  Elwood and Bush did not, however, formalize their gentleman's agreement in a written contract.  (See Cert. Admin. R. at 108-09, 157.)  After Elwood and his wife, Wendy, found an existing home to purchase as their primary residence, Elwood contacted Bush in an attempt to withdraw from the sale.  (See Cert. Admin. R. at 108-09, 157.)  Bush, however, indicated that he had relied on their verbal agreement and was intent on proceeding with the sale.  (See Cert. Admin. R. at 65, 108-09, 157.)  The Elwoods decided to proceed with the purchase, intending to resell the contiguous lots thereafter.  (See Cert. Admin. R. at 65, 108.)  Accordingly, on December 11, 2017, the Trust[1] purchased Lots 8 and 9, which are the subject of this appeal, from Carr Road Development for $1,550,000.  (See Cert. Admin. R. at 62-64, 66.)

At the time of the sale, it appears that both lots had been receiving the benefit of

---

[1]  The certified administrative record does not provide any information regarding the formation or purpose of the Trust.  (See, e.g., Cert. Admin. R. at 135 ¶ 9.)  The Indiana Board, however, presumed that "one or both of the Elwoods [were] beneficiaries [of the Trust] and that one of them [was] the trustee."  (Cert. Admin. R. at 135 ¶ 9.)

the "developer's discount"[2]; thus, their assessments were calculated by applying a negative 99 percent influence factor[3] to the extended value of each lot. (See, e.g., Cert. Admin. R. at 46, 49, 62-64.) As a result, the 1.07 acres encompassing Lot 8 had an assessed value of $1,900, while the 0.88 acres spanning Lot 9 carried an assessment of $2,000. (See Cert. Admin. R. at 46, 49, 62-64.)

In 2018, however, the Bartholomew County Assessor removed the developer's discount from each lot, increasing the assessment of Lot 8 to $729,100 and of Lot 9 to $705,600. (See, e.g., Cert. Admin. R. at 46, 49, 148.) While these assessment valuations remained the same in 2019, they were reduced to $412,600 and $416,100 respectively, in 2020. (See Cert. Admin. R. at 47-48, 50-51.) Sometime thereafter, the Elwoods initiated the re-platting of their two lots, dividing them back into four lots, to facilitate their resale. (See Cert. Admin. R. at 108, 112, 157-58.)

On May 27, 2020, the Trust filed three Form 130 appeals with the Assessor, challenging the removal of the developer's discount for each of the 2018 to 2020 assessment years. (See, e.g., Cert. Admin. R. at 133 ¶ 1.) Specifically, for the 2018 and 2019 assessment years, the Trust's Form 130 appeals requested relief under the correction of error appeal procedure, which is reserved for correcting only objective errors. (See, e.g., Cert. Admin. R. at 7-8, 23-24.) See also Bushmann, LLC v.

---

[2] "The 'developer's discount[,]' [which] is designed to encourage developers to buy farmland, subdivide [it] into lots, and resell the lots[,]" typically allows land developers to "'reap[] the benefit' of [] lower agricultural land assessment[s]." REAL PROPERTY ASSESSMENT GUIDELINES FOR 2011 ("Guidelines") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011) (amended 2020)), Ch.2 at 80-81. See also, e.g., IND. CODE § 6-1.1-4-12 (2023) (the "Developer's Discount Statute").

[3] An "influence factor" is a "multiplier that is applied to the value of land to account for characteristics of a particular parcel of land that are peculiar to that parcel. The factor may be positive or negative and is expressed as a percentage." Guidelines, Glossary at 12.

Bartholomew Cnty. Assessor, 187 N.E.3d 355, 357-58 (Ind. Tax Ct. 2022). Under this procedure, an appeal must be initiated no "later than three (3) years after the taxes were first due." See IND. CODE § 6-1.1-15-1.1(a)-(b) (2020); see also Bushmann, 187 N.E.3d at 357-60. In contrast, for 2020, the Trust opted for the appeal procedure that allows all assessment errors to be addressed, provided that the appeal is filed within the shorter appeal deadline prescribed under Indiana Code § 6-1.1-15-1.1.[4] (See, e.g., Cert. Admin. R. at 133 ¶ 1.) See also I.C. § 6-1.1-15-1.1(a)-(b).

On April 6, 2021, the Bartholomew County Property Tax Assessment Board of Appeals ("PTABOA") conducted a hearing on the Trust's appeals. (See, e.g., Cert. Admin. R. at 13.) On July 15, 2021, the PTABOA issued three final assessment determinations ("Forms 115") that reinstated the developer's discount for each of the assessment years at issue. (See, e.g., Cert. Admin. R. at 11-13.) The PTABOA's decision resulted in substantial assessment reductions, amounting to over $700,000 for 2018 and 2019, and over $400,000 for 2020. (See, e.g., Cert. Admin. R. at 46-51.)

Dissatisfied with the PTABOA's decisions, the Assessor appealed all three of the PTABOA's determinations to the Indiana Board on September 1, 2021, and the Indiana Board conducted a hearing on July 28, 2022. (See, e.g., Cert. Admin. R. at 17-18, 144.) During the hearing, the Assessor claimed that the PTABOA's reinstatements were improper because subjective judgment, not an objective "yes or no" query, was necessary to determine whether the developer's discount applied. (See Cert. Admin. R. at 150.) Consequently, she argued that because the Trust's 2018 and 2019 appeals required

---

[4] The Trust's 2020 appeal documentation is not included in the certified administrative record. (See Cert. Admin. R.) But see IND. CODE § 6-1.1-15-6(b)(1) (2023) (specifying that the certified administrative record is to include, among other things, copies of all notices, petitions, motions, and pleadings submitted to the Indiana Board by the parties).

4

subjective judgment, they were filed after the applicable deadline under Indiana Code § 6-1.1-15-1.1(b) and were time-barred.  (See Cert. Admin. R. at 150.)

The Assessor also asserted that the Trust presented evidence throughout the administrative proceedings that failed to demonstrate the Elwoods' eligibility for the developer's discount.  (See Cert. Admin. R. at 148-51.)  For example, she emphasized evidence alleged to be contrary to a finding that the Trust was a land developer:  1) it was Carr Road Development, not the Trust, that incurred the costs related to land development and infrastructure installation; 2) Elwood openly described himself as being in the "people business" and not in land development; and 3) Elwood acquired the two lots intending to build his own residence.  (See Cert. Admin. R. at 148-51.)  In addition, the Assessor claimed that because the lots were valued at only $1,434,700 in 2018, their assessments should be increased to align with the Trust's 2017 purchase price of $1,550,000.  (See Cert. Admin. R. at 77, 150-52.)

The Trust responded that the Assessor's removal of the developer's discount was illegal as a matter of law.  (See Cert. Admin. R. at 161.)  In support, the Trust claimed it was acting as a land developer because at the time of actual purchase, it intended to resell the two lots, having subsequently re-platted them back to four lots to enhance their marketability.  (See Cert. Admin. R. at 156-58, 161.)  The Trust further asserted that the developer's discount should never have been removed because none of the statutory events that allowed a reclassification of the property had occurred.  (See Cert. Admin. R. at 155-56.)

On December 21, 2022, the Indiana Board issued its final determination, finding in favor of the Assessor on the 2018 and 2019 appeals and the Trust on the 2020 appeal.

Specifically, the Indiana Board determined that the Trust's 2018 and 2019 appeals were untimely because ascertaining a taxpayer's eligibility for the developer's discount indeed depended on the application of subjective judgment. (See Cert. Admin. R. at 138-39 ¶¶ 20-24, 142 ¶ 38.) As a result, the Indiana Board found that the PTABOA had no authority to reinstate the developer's discount for those years, and the Assessor's request to increase the 2018 and 2019 assessments was time-barred. (See Cert. Admin. R. at 136-40 ¶¶ 12-25.) Additionally, the Indiana Board found that the Trust's 2020 appeal was timely "[a]nd [that] the Assessor, who had the burden of proof, failed to make a prima facie case for changing the PTABOA's determinations." (See Cert. Admin. R. at 140-42 ¶¶ 28-37, 142-43 ¶ 39 (emphasis added).) Accordingly, for the 2018 and 2019 tax years, the Indiana Board reinstated the original assessments of $729,100 for Lot 8 and $705,600 for Lot 9 and, for the 2020 tax year, the Indiana Board upheld the PTABOA's assessments of $5,200 for each lot. (See Cert. Admin. R. at 133 ¶ 2, 142-43 ¶¶ 38-39.)

On February 4, 2023, the Trust initiated this original tax appeal, challenging the Indiana Board's determination for only the 2018 and the 2019 tax years. The Court conducted oral argument on July 13, 2023. Additional facts will be supplied as necessary.

**STANDARD OF REVIEW**

The party seeking to reverse an Indiana Board final determination bears the burden of demonstrating its invalidity. Square 74 Assocs. LLC v. Marion Cnty. Assessor, 138 N.E.3d 336, 340 (Ind. Tax Ct. 2019). Consequently, the Trust must demonstrate to the Court that the Indiana Board's final determination in this matter is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority,

6

or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence.  See IND. CODE § 33-26-6-6(e)(1)-(5) (2023).

**LAW**

When the Trust filed its three Form 130 appeals in 2020, Indiana Code § 6-1.1-15-1.1, in relevant part, stated:

> (a) A taxpayer may appeal an assessment of a taxpayer's tangible property by filing a notice in writing with the township assessor, or the county assessor if the township is not served by a township assessor.  Except as provided in subsections (e) and (h), an appeal under this section may raise any claim of error related to the following:
>
> (1) The assessed value of the property.
>
> (2) The assessment was against the wrong person.
>
> (3) The approval[,] denial[,] or omission of a deduction, credit, exemption, abatement, or tax cap.
>
> (4) [A] clerical, mathematical, or typographical mistake.
>
> (5) The description of the real property.
>
> (6) The legality or constitutionality of a property tax or assessment.
>
> A written notice under this section must be made on a form designated by the department of local government finance.  A taxpayer must file a separate petition for each parcel.
>
> (b) A taxpayer may appeal an error in the assessed value of the property under subsection (a)(1) any time after the official's action, but not later than the following:
>
> (1) For assessments before January 1, 2019, the earlier of:
>
> (A) forty-five (45) days after the date on which the notice of assessment is mailed by the county; or
>
> (B) forty-five (45) days after the date on which the tax statement is mailed by the county treasurer,

7

regardless of whether the assessing official changes the taxpayer's assessment.

(2) For assessments of real property, after December 31, 2018, the earlier of:

(A) June 15 of the assessment year, if the notice of assessment is mailed by the county before May 1 of the assessment year; or

(B) June 15 of the year in which the tax statement is mailed by the county treasurer, if the notice of assessment is mailed by the county on or after May 1 of the assessment year.

\* \* \* \* \*

A taxpayer may appeal an error in the assessment under subsection (a)(2), (a)(3), (a)(4)[,] (a)(5), or (a)(6) not later than three (3) years after the taxes were first due.

I.C. § 6-1.1-15-1.1(a)-(b).  In 2018, the Developer's Discount Statute, in relevant part,

read as follows:

(a) As used in this section, "land developer" means a person that holds land for sale in the ordinary course of the person's trade or business. . . .

(b)  As used in this section, "land in inventory" means:

(1)  a lot; or

(2)  a tract that has not been subdivided into lots;

to which a land developer holds title in the ordinary course of the land developer's trade or business.

(c) As used in this section, "title" refers to legal or equitable title, including the interest of a contract purchaser.

\* \* \* \* \*

(e) Except as provided in subsections (i) and (j), if:

(1)  land assessed on an acreage basis is subdivided into lots; or

8

(2)  land is rezoned for, or put to, a different use;

the land shall be reassessed on the basis of its new classification.

\* \* \* \* \*

(i)  Subject to subsection (j), land in inventory may not be reassessed until the next assessment date following the earliest of:

(1)  the date on which title to the land is transferred by:

(A) the land developer; or

(B) a successor land developer that acquires title to the land;

to a person that is not a land developer;

(2)  the date on which construction of a structure begins on the land; or

(3)  the date on which a building permit is issued for construction of a building or structure on the land.

(j)  Subsection (i) applies regardless of whether the land in inventory is rezoned while a land developer holds title to the land.

IND. CODE § 6-1.1-4-12 (2018) (amended 2019).[5]  In 2020, the statute was amended to clarify that for purposes of the developer's discount, "the definition for 'land developer' . . . is based on [the] satisfaction of the requirements" stated in Indiana Code § 6-1.1-4-12.  See Pub.L. No. 154-2020, § 2.  (See also Cert. Admin. R. at 105-06.)

**ANALYSIS**

On appeal, the Trust claims the Indiana Board's finding that its 2018 and 2019 appeals were untimely constitutes an abuse of discretion that warrants reversal given the unique circumstances of this case.  (See, e.g., Pet'r Br. at 1; Oral Arg. Tr. at 9.)  The

---

[5]  The 2019 amendment of the Developer's Discount Statute has no bearing on the outcome of this case.  See Pub.L. No. 257-2019, § 13.

9

primary issue in this case, as framed by the Court, is whether determining a taxpayer's eligibility for the developer's discount requires objective or subjective judgment.[6] The answer to this question governs whether the Trust's 2018 and 2019 appeals were timely.

The Trust admits that even though a determination of the Elwoods' eligibility for the developer's discount would generally require subjective judgment, it does not in this case.[7] (See Oral Arg. Tr. at 3-14.) Instead, it claims that the unique facts of this case dictate a purely objective "yes or no" judgment, rendering its 2018 and 2019 appeals eligible for the three-year limitation period under Indiana Code § 6-1.1-15-1.1(b). (See, e.g., Pet'r Br. at 5-6; Oral Arg. Tr. at 9.) Specifically, the Trust argues that because the Elwoods were well-known in the community and to the members of the PTABOA, the facts as presented were a certainty, eliminating the need for any subjective analysis. (See Pet'r Br. at 4-6; Oral Arg. Tr. at Oral Arg. 10-11.) Accordingly, the Trust claims that the Indiana Board overlooked these unique circumstances that only necessitated the use of objective judgment to determine the Elwoods' eligibility for the developer's discount in 2018 and 2019. (See Pet'r Br. at 6-9; Oral Arg. Tr. at 7-10.) The Court disagrees.

The Trust's argument is unique, but well-known facts to individuals on an administrative board or within a community do not convert a subjective issue into an

---

[6] The Trust also raises the issue that the developer's discount should be applied to the 2018 and 2019 assessments pursuant to the equitable "clean-hands doctrine." (See Pet'r Reply Br. at 1-2.) This Court is authorized to entertain equitable claims, especially in cases like this, where fairness of a monetary burden may be at issue. See Gertz v. Porter Cnty. Assessor, 187 N.E.3d 978, 984 n.8 (Ind. Tax Ct. 2022). Here, however, the Trust failed to raise its equitable claim at the administrative level; thus, the claim is waived and may not be considered by this Court on appeal. See, e.g., Riley-Roberts Park, LP v. O'Connor, 186 N.E.3d 162, 175 (Ind. Tax Ct. 2022), review denied.

[7] Despite the lack of evidence in the record in support, the Trust has consistently portrayed itself and the Elwoods as indistinguishable. (See, e.g., Cert. Admin. R. at 135 ¶ 9.) Because the Assessor has made no challenge to this assertion, the Court will also refer to them as indistinguishable.

10

objective one.  An analysis of the facts must still occur to consider the views of each of the opposing litigants.  Accordingly, in this case, the "unique facts" must be evaluated against the statutory requirements to be deemed a land developer.

The plain language of the Developer's Discount Statute defines a "land developer" as "a person that holds land for sale in the ordinary course of the person's trade or business[,]" a threshold requirement for eligibility for the developer's discount.  See I.C. § 6-1.1-4-12(a) (emphasis added).  As recognized by the Indiana Board, however, there is no bright-line test or finite objective standard to establish when the customary or regular practice in a taxpayer's trade or business involves holding land in inventory.  (See Cert. Admin. R. at 139 ¶ 23 (stating that the fact-sensitive determination is "a far cry from the type of 'simple true or false finding of fact' that qualify an issue as objective" (citation omitted)).)  Here, the facts initially reveal that the Elwoods did not intend to hold the lots in inventory, but to construct their family home.  (See Cert. Admin. R. at 108-09.)  Later, however, the Elwoods decided to sell the property because they found a home elsewhere. (See Cert. Admin. R. at 65, 108-09.)  While the record shows that the Elwoods did have the land replatted to better market it for resale, (see, e.g., Cert. Admin. R. at 108), the record also shows that only Carr Road Development did any "development" of the land. (See, e.g., Cert. Admin. R. at 109.)  Moreover, the Trust did not present any direct evidence showing that the Elwoods were in the trade or business of land development. (See Cert. Admin. R. at 80-124, 153-59.)  This juxtaposition of facts indicates that subjective analysis is required to determine whether the Elwoods were indeed land developers that held the four lots in inventory.

Deciding which of these facts, if any, are dispositive in determining whether the

11

Elwoods were land developers eligible for the developer's discount requires subjective analysis: interpreting the relevance and importance of the objective facts and evaluating one's intent involves subjectivity. Consequently, the Trust has not demonstrated that the Indiana Board abused its discretion and that its final determination must be reversed.

**CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the Indiana Board's final determination.